# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

US FOODS, INC.,

    Plaintiff,

v.                                    Civil No.: BPG-18-987

BRYAN CRITTENDEN,

    Defendant.

## MEMORANDUM OPINION

Plaintiff US Foods, Inc. ("US Foods," or "plaintiff") brings this breach of contract action against defendants Germain Holdings, LLC, d/b/a Overlea Caterers ("Overlea") and Bryan Crittenden ("Crittenden," or "defendant"), alleging that Overlea entered into two contracts with plaintiff, which were guaranteed by Crittenden, and breached said contracts by failing to make full payments for goods and services provided by plaintiff. (ECF No. 1 at 3–4). Currently pending before the court is plaintiff's Motion for Summary Judgment ("Motion") (ECF No. 27). Plaintiff has also submitted a Supplemental Brief in Support of Motion for Summary Judgment ("Supplemental Brief") (ECF No. 36). Defendant, who is pro se, was notified that the Motion had been filed and given an opportunity to respond but failed to do so. (ECF No. 29). Upon review of the pleadings and the applicable case law, the court determines that no hearing is necessary. See Local Rule 105.6. For the reasons stated below, plaintiff's Motion (ECF No. 27) is GRANTED.

I.     **BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). "[T]he failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion." Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

In June 2017, plaintiff, a food service distributor, contracted with Overlea, who prepared and delivered bulk meals to customers in Maryland, to sell and deliver goods to Overlea. (ECF No. 27-1 at 1–2). First, plaintiff executed an Electronic Credit Application (the "Credit Agreement") pursuant to which plaintiff "agreed to sell and Overlea agreed to purchase food and food-related goods to be delivered to Overlea." (ECF No. 27-1 at 2). The Credit Agreement included a personal guaranty clause, signed by Crittenden. (Id. (citing ECF No. 27-4 at 7)). That same month, plaintiff and Overlea executed a Master Distribution Agreement ("MDA") that incorporated the Credit Agreement and further detailed the terms of the agreement. (ECF No. 27-1 at 2 (citing ECF No. 34 at 6)).

Pursuant to the Credit Agreement and the MDA, Overlea ordered food and food-related goods from plaintiff, and plaintiff provided Overlea with these goods. (ECF No. 27-1 at 3 (citing ECF No. 27-5)). For each order made by Overlea, plaintiff created and provided Overlea with an invoice detailing the amount due and terms. (Id.) Overlea failed to fully pay these invoices, however, and plaintiff filed suit on April 5, 2018, alleging that Overlea owed $296,551.01, exclusive of interest, costs, and fees. (ECF No. 1 at 5). Overlea failed to answer plaintiff's Complaint, and on July 17, 2018, the Clerk of Court entered an order of default against Overlea. (ECF No. 12). On August 14, 2018, the court entered a default judgment against Overlea in the

amount of $337,001.93, for $296,551.01 in unpaid invoices, $35,586.12 in pre-judgment interest, $4,421.80 in reasonable attorneys' fees, and $443 in costs and expenses incurred by plaintiff. (ECF No. 15). On January 28, 2019, plaintiff filed the instant Motion seeking an entry of summary judgment against Crittenden as guarantor for the agreements. (ECF No. 27).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the nonmoving party has the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315–16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or nonmoving party, but considers whether a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the

3

light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the nonmoving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the nonmoving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cty. of Prince William, 249 F.3d 295, 299–300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the nonmoving party. Anderson, 477 U.S. at 252.

When the nonmoving party fails to respond altogether to a summary judgment motion, the court may consider those facts established by the moving party's motion uncontroverted. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). The moving party must still establish, however, "that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). "Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id.

### III. DISCUSSION

#### A. Applicable Law

In its Motion, plaintiff relies on Maryland law and cites to Grudis v. J.B. Hunt Transport, Inc., 124 F. App'x 158, 159 (4th Cir. 2005), which states that "[b]ecause the source of the federal court's jurisdiction over the state law tort action was diversity of citizenship, the rule of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 . . . (1938), requires the application of the law of Maryland, the forum state, to questions of substantive law." (ECF No. 27-1 at 5). I note that the

4

Credit Agreement, however, contains two provisions that state that the laws of Delaware govern the agreement.[1]  Accordingly, I asked plaintiff to provide a supplemental brief informing the court of its position as to whether Maryland or Delaware law should govern this case and provide evidence and authority in support of its position.  (ECF No. 35).

In its Supplemental Brief, plaintiff argued that Maryland law, rather than Delaware law, applied to plaintiff's claims because Delaware did not have a substantial connection to the transactions at issue in the case.  (ECF No. 36 at 2).  As noted by plaintiff, when exercising diversity jurisdiction, a court generally "applies the substantive law of the forum state in which it sits." Taylor v. Lotus Dev. Corp., 906 F. Supp. 290, 294 (D. Md. 1995) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Erie R.R. v. Tompkins, 304 U.S. 64, 78–79 (1938)).  In Maryland, "the parties to a contract may agree as to the law that will govern their transactions, even as to issues going to the validity of the contract." Id. (citing Kronovet v. Lipchin, 414 A.2d 1096, 1104 (Md. 1980); Nat'l Glass, Inc. v. J.C. Penney Props., Inc., 650 A.2d 246, 248 (Md. 1994)).  Further, under Maryland law, the court "should presume that a parties' choice of law is enforceable." Ameritox, Ltd. v. Savelich, 92 F. Supp. 3d 389, 396 (D. Md. 2015).  A choice-of-law provision will not be honored, however, if "1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or 2) the strong fundamental public policy of the forum state precludes the application of the choice of law

---

[1] The first provision is the fifth item listed under the "Terms and Conditions" of the Credit Agreement, which states "This Application and all transactions between Applicant and Seller shall be governed by and interpreted in accordance with the laws and decisions of the State of Delaware, without regard to the conflicts of law provisions of the State of Delaware. (ECF No. 27-4 at 6).  The second provision appears in the "Personal Guaranty" section of the Credit Agreement and states "This Guaranty shall be governed by and interpreted with the laws and decisions of the State of Delaware.  Guarantor irrevocably agrees, and hereby consents and submits to the non-exclusive jurisdiction of any state or federal court located in the state where Sellers' operating company which provided this Guaranty is located, without regard to the conflicts of law provisions thereof (the "Applicable State"), with regard to any actions or proceedings arising from, relating to or in connection with the Liabilities, this Guaranty or any collateral or security therefore."  (ECF No. 27-4 at 7).

provision." Taylor, 906 F. Supp. at 294 (quoting Am. Motorists Ins. Co. v. ARTRA Group, Inc., 659 A.2d 1295, 1301 (Md. 1995)).

Here, plaintiff argues that Delaware does not have a substantial connection to the transactions at issue in this case. (ECF No. 36 at 2). Specifically, plaintiff argues, defendant Overlea is "a Maryland liability company doing business in Maryland" that transacted with plaintiff "for the delivery of food and food-related goods and services delivered within the State of Maryland." (ECF No. 36 at 3). Additionally, plaintiff argues, Crittenden, as guarantor, "guaranteed payment for these food and food-related goods and services order [sic] and delivered within the State of Maryland." Id. Finally, plaintiff states that "the transactions resulting in the breaches at issue also occurred within the State of Maryland." Id. For these reasons, plaintiff argues that the court should apply Maryland law to its claims.

The Fourth Circuit has previously held, however, that "a party's state of incorporation provides the necessary 'substantial relationship' for application of its laws." Ciena Corp. v. Jarrard, 203 F.3d 312, 324 (4th Cir. 2000) (finding that it was not unreasonable for the plaintiff to select the law of Delaware, its state of incorporation, to govern its contracts even though its principal place of business was Maryland). Here, although Delaware may not have a substantial connection to the transactions at issue, Delaware does have a substantial relationship to plaintiff, as plaintiff is incorporated in the state of Delaware. (ECF No. 1 at 1). Accordingly, plaintiff has not offered any evidence that Delaware "has no substantial relationship to the parties or the transaction." Taylor, 906 F. Supp. at 294 (emphasis added). Similarly, plaintiff has not argued that "the strong fundamental public policy of [Maryland] precludes the application of the choice of law provision." Id. In sum, plaintiff has not offered sufficient evidence to overcome the presumption that the parties' choice-of-law provision is enforceable, Ameritox, Ltd., 92 F. Supp.

3d at 396, and the court will apply Delaware law in accordance with the parties' choice-of-law provisions.

### B. <u>Breach of Guaranty</u>

Plaintiff seeks summary judgment on its breach of guaranty claim in Count II of its Complaint and argues that "there is no genuine issue of material fact that the provisions of the agreements in question are enforceable."[2] (ECF No. 27-1 at 2). "[A] contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance." Falco v. Alpha Affiliates, Inc., Civil Action No. MMS-97-994, 1997 WL 782011, at *5 (D. Del. Dec. 10, 1997) (citing Jones Motor Co., Inc. v. Teledyne, Inc., 690 F. Supp. 310, 313 (D. Del. 1988)). "The guaranty is a separate contract involving duties and responsibilities which are different from the basic contract to which it is collateral." Id. (citing Jones Motor Co., Inc., 690 F. Supp. at 313). "Guaranty obligations are interpreted according to the same standards as general contracts." Falco v. Alpha Affiliates, Inc., Civil Action No. MMS-97-994, 2000 WL 727116, at *8 (D. Del. Feb. 9, 2000) (citing Restatement (Third) of Suretyship and Guaranty § 14)). "Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiffs." Greenstar, LLC v. Heller, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (citing WaveDivision Holdings, LLC v. Millennium Dig. Media Sys., LLC, Civ. No. 2993–VCS, 2010 WL 3706624, at *13 (Del. Ch. 2010)). Additionally, "[i]n order for a guaranty to be enforceable it must, with reasonable clearness, evidence an intent on the part of a party to become liable on an obligation in the event

---

[2] Plaintiff notes that it is not seeking summary judgment on Count I, which was pled against Overlea, or Counts III–V, which were pled in the alternative. (ECF No. 27-1 at 2 n.1).

of default by the primary obligor." Falco, 1997 WL 782011, at *5 (quoting Tex. Commerce Bank Nat'l Assoc. v. Capital Bancshares, Inc., et. al., 907 F.2d 1571, 1574 (5th Cir.1990)).

"The interpretation of language in a contract is a matter of law, in which the Court interprets the meaning of contract terms based solely on the contract itself." Falco, 2000 WL 727116, at *8 (citing Pellaton v. Bank of New York, 592 A.2d 473, 477 (Del. 1991); Mesa Partners v. Philips Petroleum Co., 488 A.2d 107, 113 (Del. Ch. 1984)). "[C]ourts are to read the contract as a whole and give its provisions their ordinary meaning. . . . [U]nless a contrary intent plainly appears, 'the intent of the parties must be ascertained from the language of the contract.'" Hart v. Dart Group Corp., 841 F. Supp. 549, 564 (D. Del. 1993) (quoting Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992)). Similarly, courts are not to "make any sort of value judgment about a contract whose meaning is clear." Id. (citing Ryan v. Weiner, 610 A.2d 1377, 1380 (Del. Ch. 1992)). "In the absence of ambiguity, there is no room for interpretation or a search for the intent of the parties." Id. (citing Myers v. Myers, 408 A.2d 279, 280 (Del. 1979)).

Here, the personal guaranty clause of the Credit Agreement states that the undersigned, referred to as the "Guarantor," "personally and unconditionally guaranties the payment by Applicant to Sellers of all amounts due and owing now, and from time to time hereafter ('Liabilities'), from Applicant to Sellers." (ECF No. 27-4 at 7). The terms of this clause are unambiguous and clearly evince an intent by the Guarantor, defendant, to promise to answer for the payment of the debt of the Applicant, Overlea, to the Seller, plaintiff. Further, defendant does not challenge the validity of this guaranty. Accordingly, plaintiff has established that the guaranty clause of the Credit Agreement was an enforceable guaranty between plaintiff and defendant.

Plaintiff argues that defendant breached this guaranty by failing to pay the debts of Overlea. (ECF No. 27-1 at 6). Here, it is undisputed that neither Overlea nor defendant has paid Overlea's outstanding balance of $296,551.01. (ECF No. 27-1 at 3). Defendant, in his Answer to the Complaint, states that plaintiff "failed to abide by the terms and conditions of the [Credit Agreement and MDA]" by "shipp[ing] quantities in excess of the [Credit Agreement and MDA]."[3] (ECF No. 6 at 5). Specifically, defendant notes, the amount of weekly purchases "were estimated at $0.00 to $500.00 per week" but that plaintiff was "shipping $25,000 to $35,000 per week to [Overlea]." (ECF No. 6 at 2). While the first page of the Credit Agreement does indicate an "Estimated Weekly Purchase" of $0-$500 (ECF No. 27-4 at 2), the Cover Sheet of the MDA states "Annual Purchases: $2,000,000." (ECF No. 34 at 3). Further, the MDA states that, in the event of a conflict between the terms of the Cover Sheet and related transaction documents (such as the Credit Agreement), the terms of the Cover Sheet will govern. (ECF No. 34 at 6). Accordingly, this assertion is without merit.

Defendant's remaining assertions are similarly without merit. Defendant states that Overlea "accounting records indicated that [Overlea] was delayed in payments to [plaintiff] beginning in August 2017 yet [plaintiff] continued to ship goods to [defendant]." (ECF No. 6 at 2). Defendant fails to identify any contract term, however, that required plaintiff to stop shipments of goods if defendant was delayed in payment, or any request by defendant or Overlea for plaintiff to stop shipment of goods. Similarly, defendant asserts that, following Overlea's closure, plaintiff refused to accept return of any of its goods held by Overlea (ECF No. 6 at 2), but defendant fails to identify any contract term that requires plaintiff to accept return of goods. Finally, defendant states that plaintiff never approached him to pay the debt, and states that

---

[3] While defendant failed to oppose plaintiff's Motion, I have considered defendant's Answer (ECF No. 6) in accordance with Federal Rule of Civil Procedure 56(c)(3).

Overlea communicated to plaintiff that it "was working with secured lender [sic] to determine when and how much all creditors would be paid" and that the secured lender controlled all of Overlea's assets and bank accounts. (ECF No. 6 at 5–6). The guaranty clause states that, however, that in the event of default, plaintiff may proceed directly against the guarantor without first exhausting other remedies. (ECF No. 27-4 at 6). In sum, plaintiff has established that there is no genuine dispute of material fact that defendant breached the guaranty by failing to pay Overlea's outstanding balance of $296,551.01 to plaintiff.

### C. <u>Damages</u>

In addition to the unpaid balance of $296,551.01, plaintiff seeks pre-judgment and post-judgment interest, as well as reasonable attorney's fees and costs. As to pre-judgment interest, plaintiff states that the guaranty requires the guarantor to pay interest at a rate of 1.5% for past due payments. (ECF No. 27-1 at 3 (citing ECF No. 27-4 at 7 ("Guarantor agrees that an interest charge of one and one-half (1+1/2%) percent per month, or the maximum rate that Guarantor may lawfully contract to pay, whichever is less, and in all events calculated in accordance with applicable law, shall be assessed on any amount due and owing to Sellers by Guarantor under this Guaranty until collected."))) As plaintiff notes in its Supplemental Brief, however, "Delaware law is clear that where the parties have contracted for a pre-judgment rate, the contract rate applies as long as it is not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon." (ECF No. 36 at 7 (citing 6 DEL. C. § 2301(a); <u>Beard Research, Inc. v. Kates</u>, 8 A.3d 573, 620 (Del. Ch.), <u>aff'd</u>, 11 A.3d 749 (Del. 2010)). Plaintiff notes that the current Federal Reserve discount rate is 3%, so "the amount of pre-judgment interest recoverable under Delaware law is capped at 8% per annum." <u>Id.</u> (citing 4 Federal Reserve - Discount & Advance Rates, https://www.federalreserve.gov/newsevents/pressreleases/files/

monetary20190416a1.pdf (last visited June 13, 2019)). Here, plaintiff is not entitled to the contracted pre-judgment interest rate, as this rate "is more than the maximum rate of interest of eight percent (8%) per annum recoverable under Delaware law." (ECF No. 36 at 7–8). Plaintiff is, however, entitled to pre-judgment interest at the maximum rate of 8% per annum. As noted by plaintiff, under Delaware law, "[s]uch interest is to be computed from the date payment is due." (ECF No. 36 at 7 (citing Citadel Holding Corp. v. Roven, 603 A.2d 818, 826 (Del. 1992)). Here, plaintiff does not specify the date that payment became due, and instead asks for prejudgment interest dating from April 5, 2018, the date that the Complaint was filed. (ECF No. 36 at 7). Accordingly, plaintiff is entitled to a total of $28,208.91 in prejudgment interest.[4]

Plaintiff also requests post-judgment interest, which is governed by federal law. Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999) ("Federal law, rather than state law, governs the calculation of post-judgment interest in diversity cases.") Under federal law, interest is permitted "on any money judgment in a civil case recovered in a district court" at a rate set pursuant to 28 U.S.C. § 1961. Id. (citing Hitachi Credit Am. Corp., 166 F.3d at 633). Accordingly, plaintiff's request for post-judgment interest is granted.

Finally, plaintiffs request $23,328.88 in attorneys' fees and $1,066.29 in costs. (ECF No. 27-1 at 8). As noted by plaintiffs, pursuant to the guaranty, the guarantor agreed "to pay all costs, expenses and fees, including reasonable attorneys' fees and expenses," incurred by plaintiff in enforcing the guaranty or following the guarantor's default. (ECF Nos. 27-1 at 3, 27-4 at 7). Accordingly, plaintiff is entitled to reasonable attorneys' fees and costs from defendant under the guaranty.

---

[4] There are 434 days between April 5, 2018 and the day preceding the date of this Order. Accordingly, this amount is calculated as follows: $296,551.01 x 0.08 x (434/365) = $28,208.91.

### i. Reasonable Hourly Rate

In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008). The party requesting an award of attorneys' fees must demonstrate that "the number of hours for which [it] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." Victor Stanley, Inc. v. Creative Pipe, Inc., Civil No. MJG-06-2662, 2011 WL 2552472, at *3 (D. Md. Jan. 24, 2011) (internal quotation marks omitted). Here, in accordance with Local Rule 109.2 and Appendix B to the Local Rules, plaintiff submitted a declaration of Bryan J. Harrison, Esq., in support of its request for attorneys' fees and costs ("Declaration") (ECF No. 27-7) as well as an itemization of legal fees and costs incurred (ECF No. 27-8). At the outset, however, I note that plaintiffs have only provided documentation of $22,054.89[5] in attorneys' fees and $984.23 in costs and will therefore consider whether these amounts are reasonable. (ECF No. 27-8).

"In determining whether counsel's hourly rates are reasonable, a court must consider whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Blake v. Baltimore Cty., Md., 12 F. Supp. 3d 771, 774–75 (D. Md. 2012) (citing Blum, 465 U.S. 890 n.11 (1984)). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." Id. at 775 (citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994)). "The inquiry begins with guidelines adopted by this Court . . . to provide guidance with respect to fee petitions and awards." Id. at 775.

---

[5] Plaintiff's documentation reflects that the firm charged $27,763.90 in fees that were discounted by $5,709.01 as fixed or flat fee adjustments for a total of $22,054.89. (ECF No. 27-8).

These guidelines "establish reasonable hourly rates for lawyers with different levels of experience." Id.

According to the itemization of legal fees and costs, four individuals, including Mr. Harrison, have worked on this case. (ECF No. 27-8 at 4, 16). Maria Z. Vathis, Of Counsel for Bryan Cave Leighton Paisner LLP ("BCLP"), was admitted to the Illinois bar in 2002 and charged an hourly rate of $400 in this case. Id. at 4; https://www.bclplaw.com/en-US/people/maria-z-vathis.html. Leslie A. Bayles, a partner at BCLP, was admitted to the Illinois bar in 2000 and charged an hourly rate of $512. (ECF No. 27-8 at 4); https://www.bclplaw.com/en-US/people/leslie-a-bayles.html. Demetria L. Hamilton, an associate for BCLP, was admitted to the Illinois bar in 2016, and charged an hourly rate of $310. (ECF No. 27-8 at 4); https://www.bclplaw.com/en-US/people/demetria-l-hamilton.html. Finally, Mr. Harrison, an associate at BCLP, was admitted to the Maryland bar in 2010 and charged an hourly rate of $445. (ECF No. 27-8 at 16); https://www.bclplaw.com/en-US/people/bryan-j-harrison.html.

Of the four attorneys who worked on this case, only Ms. Vathis' hourly rate of $400 is presumptively reasonable under the Local Rules.[6] See Ledo Pizza Sys., Inc. v. Singh, Civil No. WDQ-13-2365, 2014 WL 1347113, at *5 (D. Md. Apr. 3, 2014) (finding that the hourly rates billed by counsel were presumptively reasonable when within the ranges set by the Local Rules). The remaining three attorneys charge hourly rates that exceed the presumptively reasonable range established by the Local Rules. Plaintiff has failed, however, to provide any additional information to justify these increased rates. Accordingly, Ms. Bayles' hourly rate will be decreased from $512 to $425, the maximum hourly rate established by Guideline 3 of Appendix

---

[6] Ms. Vathis, who was admitted seventeen years ago, charges an hourly rate of $400 that falls within Guideline 3 of Appendix B to the Local Rules' range of hourly rates between $275 and $425 for lawyers admitted to the bar for fifteen (15) to nineteen (19) years.

B to the Local Rules' range of hourly rates lawyers admitted to the bar for fifteen to nineteen years, given that she was admitted nineteen years ago. Mr. Harrison's hourly rate will be decreased from $445 to $275, which falls in the lower half of the hourly rates established by Guideline 3 of Appendix B to the Local Rules for lawyers admitted to the bar for nine to fourteen years, as he was admitted nine years ago. Ms. Hamilton's hourly rate will be decreased from $310 to $200, which is in the upper half of the hourly rates established by Guideline 3 of Appendix B to the Local Rules for lawyers admitted to the bar for less than five years, as she was admitted three years ago. In sum, plaintiff's attorneys' fees will be reduced by a total of $6,726.40[7] to $15,328.49.

### ii. Reasonable Hours

Fee applicants must also establish the reasonableness of the hours requested. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Plaintiffs may not recover fees for time that is "excessive, redundant, or otherwise unnecessary." CoStar Grp., Inc v. LoopNet, Inc., 106 F. Supp. 2d 780, 789 (D. Md. 2000). After reviewing the billing records submitted, the court must ensure that counsel has exercised "billing judgment," that is, "winnowing the hours actually expended down to the hours reasonably expended." Id. (citing Hensley, 461 U.S. at 434); see also Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 765 (D. Md. 2001) (courts should review fee petitions just as a cost-conscious client would, calling into question any entries that appear duplicative, inefficient, or unnecessary).

Here, counsel billed a total of 71.9 hours, including time spent preparing the complaint, preparing a Motion for Default Judgment against Overlea, engaging in discovery for the case against Crittenden, participating in a settlement conference, and filing the instant Motion. Based

---

[7] Ms. Bayles' total fee is reduced from $1,638.40 to $1,360 for 3.2 hours of work at $425 per hour. Ms. Hamilton's total fee is reduced from $7,967.00 to $5,140 for 25.7 hours of work at $200 per hour. Mr. Harrison's total fee is reduced from $9,478.50 to $5,857.50 for 21.3 hours of work at $275 per hour.

upon my review of these records, I find that, with two exceptions, counsel has exercised "billing judgment," and that the hours expended by the firms were reasonable. I do find, however, that there are two areas where the hours charged by counsel were excessive, redundant, and unnecessary, and will reduce plaintiff's award of attorneys' fees accordingly.

First, I note that plaintiff billed a total of 17.3 hours for the preparation of its Motion for Clerk's Entry of Default Against Defendant Germain Holdings, LLC d/b/a Overlea Caterers (ECF No. 10) and Motion for Default Judgment Against Defendant Germain Holdings, LLC d/b/a Overlea Caterers (ECF No. 14). As to the first motion, plaintiff billed 8.9 hours, although the motion itself was only three pages, one of which was a certificate of service, and merely recited the fact that Overlea had failed to respond to the Complaint despite being properly served and that plaintiff was therefore entitled to a default judgment. Accordingly, I find that it was excessive and unnecessary for counsel to spend 8.9 hours working on this motion and will allow Ms. Hamilton, who performed the bulk of the work preparing this motion, 1.5 hours for drafting and filing this pleading, and Ms. Vathis 0.5 hours for her review of this motion, and reduce the award of attorneys' fees by $1,830 for the remaining 6.9 hours.[8]

As to the second motion, plaintiff billed 8.5 hours. (ECF No. 27-8). While the second motion was more substantive than the first, it was only six pages, and the legal analysis was not complex. Further, while plaintiff did submit two affidavits in support of this motion, neither was lengthy, and both largely contained the same information as the motion itself. Similarly, here, I find that it was excessive and unnecessary for counsel to spend 8.5 hours working on this pleading. I will allow Mr. Harrison, who performed the majority of the work preparing this motion, four hours for his preparation of the motion, Ms. Vathis one hour for her review and

---

[8] Ms. Vathis spent 1.8 additional hours for a total of $720, Mr. Harrison spent 1.2 hours for a total of $330, and Ms. Hamilton spent an additional 3.9 hours for a total of $780, for a total reduction of $1,830. (ECF No. 27-8)

15

revision of the motion, and reduce the award of attorneys' fees by $1000 for the remaining 3.5 hours.[9] In sum, I will reduce the award of attorneys' fees by $2,830 for these motions, bringing the total to $12,498.49.

Additionally, I note that plaintiff billed a total of 14.8 hours for the preparation of the instant Motion for Summary Judgment (ECF No. 27). While this motion was longer and contained more legal analysis than the Motion for Default Judgment, it was only nine pages, and it did not require extensive factual or legal analysis. Accordingly, I find that it was excessive and unnecessary for counsel to spend 14.8 hours working on this pleading. I will allow Ms. Hamilton, who spent the most time drafting this motion, nine hours for her preparation of the motion, and allow Ms. Vathis and Mr. Harrison 0.8 and 0.5 hours, respectively, for their time spent reviewing the motion. I will reduce the award of attorneys' fees by $900[10] for the remaining time spent on the motion, bringing the total award of attorneys' fees to $11,598.49.

In total, I will reduce the award of attorneys' fees by $3,730 for time that is "excessive, redundant, or otherwise unnecessary." CoStar Grp., Inc., 106 F. Supp. 2d at 789. I find, however, that a total award of attorneys' fees of $11,598.49 is reasonable and well-documented in the records provided by counsel. (ECF Nos. 27-7, 27-8).

### iii. Costs

Finally, plaintiff requests reimbursement of $984.23 in costs. Specifically, plaintiff has provided documentation that it paid $400 in filing fees for the Complaint, $43 in fees to file its lien against defendant, $527.65 in subpoena fees, and $13.58 in postage fees, for a total of $984.23. (ECF No. 27-8). I find that these costs are reasonable and documented in the record. Id.; See also Schedule of Fees, http://www.mdd.uscourts.gov/publications/Forms/

---

[9] Ms. Hamilton spent 0.5 hours for a total of $100, Mr. Harrison spent an additional 2.6 hours for a total of $660, and Ms. Vathis spent an additional 0.6 hours for a total of $240. (ECF No. 27-8).
[10] Ms. Hamilton spent an additional 4.5 hours working on this motion for a total of $900. (ECF No. 27-8).

ScheduleofFees.pdf (January 1, 2019) (cost of filing a civil action in this court is $400.00). Accordingly, I will grant plaintiff an award of $984.23 in costs.

## IV.     **CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Summary Judgment (ECF No. 27) is granted.  Plaintiff is awarded $296,551.01 for defendant's breach of the guaranty, pre-judgment interest in the amount of $28,208.91, post-judgment interest at the rate set by 28 U.S.C. § 1961, $11,598.49 in attorneys' fees, and $984.23 in costs.  A separate order will be issued.


Date:  June 13, 2019                                   /s/
                                              Beth P. Gesner
                                              Chief United States Magistrate Judge